**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION**

MARY PARADISE,

                Plaintiff,

vs.                                         Case No.  3:12-cv-519-J-JRK

CAROLYN W. COLVIN,[1]
Acting Commissioner of Social Security,

                Defendant.

_____/

## OPINION AND ORDER[2]

### I.  Status

      Mary Paradise ("Plaintiff") is appealing the Commissioner of the Social Security Administration's final decision denying her claim for disability insurance benefits ("DIB"). Plaintiff's alleged inability to work is a result of "complications due to anterior cervical fusion and back injury[ and] depression."  Transcript of Administrative Proceedings (Doc. No. 11; "Tr." or "administrative transcript"), filed July 19, 2012, at 44.  On March 6, 2001, Plaintiff filed an application for DIB, alleging on onset date of May 28, 1998.  Tr. at 111-13.  Plaintiff's application was denied initially, see Tr. at 61-62, and was denied upon reconsideration, see Tr. at 64-65.  On January 21, 2003, a hearing was held before an Administrative Law Judge ("ALJ").  Tr. at 719-55.  After that hearing, on March 13, 2003, the ALJ issued a decision

---

[1]     Carolyn W. Colvin became the Acting Commissioner of Social Security on February 14, 2013. Pursuant to Rule 25(d)(1), Federal Rules of Civil Procedure, Carolyn W. Colvin is substituted for Michael J. Astrue as Defendant in this suit.  No further action need be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

[2]     The parties consented to the exercise of jurisdiction by a United States Magistrate Judge.  See Notice, Consent, and Reference of a Civil Action to a Magistrate Judge (Doc. No. 12), filed July 19, 2012; Reference Order (Doc. No. 13), entered July 23, 2012.

denying Plaintiff's claim.  Tr. at 50-60.  The Appeals Council, however, granted Plaintiff's request for review, vacated the ALJ's March 13, 2003 decision, and remanded Plaintiff's claim to an ALJ.  See Tr. at 87-90.

On July 18, 2005, a second ALJ held a hearing, during which Plaintiff and a VE testified.  See Tr. at 756-93.  At the time of the second hearing, Plaintiff was forty-three (43) years old.  Tr. at 760.  After the July 18, 2005 hearing, the second ALJ issued a decision on October 18, 2005, denying Plaintiff's claim.  Tr. at 23-32.  On January 25, 2007, the Appeals Council denied Plaintiff's request for review, see Tr. at 12-14, thereby making the second ALJ's October 18, 2005 decision the final decision of the Commissioner.

Plaintiff commenced an action in this Court on March 26, 2007.  See Compl. (Doc. No. 1), No. 3:07-cv-225-TEM (M.D. Fla.).  This Court entered an Order and Opinion on March 26, 2009, reversing the Commissioner's final decision and remanding the matter with instructions to the administration for further consideration.  See Order and Opinion (Doc. No. 25);[3] Judgment (Doc. No. 26), No. 3:07-cv-225-TEM (M.D. Fla.), entered March 27, 2009. The Order and Opinion directed the Commissioner as follows: "[t]he additional proceedings, should include, but are not limited to: assessment of the severity of all of Plaintiff's medically determinable impairments and, in light thereof, re-assessment of Plaintiff's RFC; re-weigh the treating source opinions in accordance with the directions of the [Appeals Council] from the administrative remand order; and, if warranted, obtain additional vocational expert testimony."  Order and Opinion (Doc. No. 25), No. 3:07-cv-225-TEM (M.D. Fla.), at 19-20.[4]

---

[3]       The Order and Opinion also appears in the administrative transcript at pp. 821-40.

[4]       See also Tr. at 839-40.

In accordance with this Court's Order and Opinion, on May 5, 2009, the Appeals Council again remanded the matter to an ALJ for further proceedings.  Tr. at 841-43.

On May 4, 2010, a third ALJ held a hearing during which Plaintiff, a VE, and two (2) medical experts testified.  Tr. at 1008-96.  At the time of the third hearing, Plaintiff was forty-eight (48) years old.  Tr. at 1078 (indicating Plaintiff's date of birth).  After the third hearing, the ALJ issued a decision on June 15, 2010 denying Plaintiff's claim.  Tr. 803-18.  On February 23, 2012, the Appeals Council "found no reasons under [their] rules to assume jurisdiction," Tr. at 794-97; therefore, the June 15, 2010 Decision of the third ALJ became the final decision of the Commissioner.  From that Decision, Plaintiff now appeals to this Court.  See Complaint (Doc. No. 1), filed May 2, 2012.

Plaintiff delineates two (2) issues in her memorandum: 1) whether the ALJ erred by discounting the opinion of Plaintiff's treating psychiatrist, Robert Groble, M.D., P.A. ("Dr. Groble"); and 2) whether the ALJ failed to fully and fairly evaluate the medical evidence in the record.  See Memorandum in Support of Complaint (Doc. No. 16; "Pl.'s Mem."), filed September 19, 2012, at 9-20; see also Tr. at 456 (noting Dr. Groble's credentials).   In both issues, Plaintiff focuses on the ALJ's treatment of Dr. Groble's opinions.  See Pl.'s Mem. at 9-20.  Plaintiff contends that Dr. Groble's opinions, if given great weight, would warrant a finding of disability.  See id. at 7, 11, 16-17.  Plaintiff also contends that this Court's March 26, 2009 Order and Opinion remanding this matter indicated that good cause did not exist to discount Dr. Groble's opinions.  See id. at 10.

On November 23, 2012, Defendant filed a memorandum addressing the issues raised by Plaintiff.  See Memorandum in Support of the Commissioner's Decision (Doc. 17; "Def.'s

Mem."). Specifically, Defendant asserts that Dr. Groble failed to provide any objective narrative support for his opinions, which, according to Defendant, is a sufficient basis for the ALJ to discount Dr. Groble's opinions. Id. at 6-7. Furthermore, Defendant asserts that other medical opinions from the record undermine Dr. Groble's opinions. Id. at 9-15.

After a thorough review of the entire record and consideration of the parties' respective memoranda, the Commissioner's final decision is due to be affirmed for the reasons explained herein.

## II.  The ALJ's Decision

When determining whether an individual is disabled,[5] an ALJ must follow the five-step sequential inquiry set forth in the Code of Federal Regulations ("Regulations"), determining as appropriate whether the claimant (1) is currently employed or engaging in substantial gainful activity; (2) has a severe impairment; (3) has an impairment or combination of impairments that meets or medically equals one listed in the Regulations; (4) can perform past relevant work; and (5) retains the ability to perform any work in the national economy. 20 C.F.R. §§ 404.1520, 416.920; see also Phillips v. Barnhart, 357 F.3d 1232, 1237 (11th Cir. 2004). The claimant bears the burden of persuasion through step four and, at step five, the burden shifts to the Commissioner. Bowen v. Yuckert, 482 U.S. 137, 146 n.5 (1987).

Here, the ALJ followed the five-step sequential inquiry. See Tr. at 805-18. At step one, the ALJ determined that Plaintiff "did not engage in substantial gainful activity during the period from her alleged onset date of May 28, 1998 through her date last insured of

_____

[5]      "Disability" is defined in the Social Security Act as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months[.]"  42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).

December 31, 2003." Tr. at 805 (emphasis and citation omitted).  At step two, the ALJ found

that through the date last insured, Plaintiff "had the following severe impairments:

degenerative cervical disc disease status post fusion and a major depressive disorder." Tr.

at 805  (emphasis and citation omitted).  At step three, the ALJ ascertained that "[t]hrough

the date last insured, [Plaintiff] did not have an impairment or combination of impairments

that met or medically equaled one of the listed impairment in 20 CFR Part 404, Subpart P,

Appendix 1."  Tr. at 806 (emphasis and citations omitted).

The ALJ considered the entire record and determined that "through the date last

insured, [Plaintiff] had the [following] residual functional capacity" ("RFC"):

> [Plaintiff could] perform light work . . . except [Plaintiff] was only able to
> occasionally reach overhead with either upper extremity, within the weight
> limitations associated with the light level of exertion.  She should not climb
> ladders, ropes or scaffolds, but she can occasionally climb stairs and ramps.
> [Plaintiff] can occasionally bend, stoop, squat and kneel, but she should not
> crawl.  She should not work at unprotected heights during the time period in
> question.  From a mental standpoint, [Plaintiff] had 'moderate' limitation in her
> ability to understand and remember complex instructions, carry out complex
> instructions and the ability to make judgments on complex work related
> decisions.  She also would have had 'moderate' limitation in the ability to
> interact appropriately with the general public, interact appropriately with
> supervisors and interact appropriately with co-workers. [Plaintiff] would have
> 'moderate' limitations in her ability to respond appropriately to usual work
> situations and to changes in a routine work setting.  As used herein, the term
> 'moderate' is defined as that there exists more than a slight limitation of function
> but that the person is still able to perform the defined task in a satisfactory
> manner.

Tr. at 807 (emphasis omitted).  At step four, the ALJ found that "[t]hrough the date last

insured, [Plaintiff] was capable of performing her past relevant work as an auditor clerk,

insurance clerk and insurance sales agent." Tr. at 816 (emphasis omitted). Because Plaintiff

could perform her past relevant work, the ALJ determined Plaintiff was not disabled.  Tr. at 816.

The ALJ, however, continued the sequential inquiry and alternatively found that "considering [Plaintiff's] age, education, work experience and [RFC], there were other jobs that existed in significant numbers in the national economy that [Plaintiff] also could have performed," including "[p]aramutual ticket checker," "[o]rder clerk, food and beverage," "[t]icket taker," "[r]oute clerk," and "[a]ddressor."  Tr. at 817-18.  The ALJ concluded, therefore, that Plaintiff "was not under a disability . . . at any time from May 28, 1998, the alleged onset date, through December 31, 2003, the date last insured."  Tr. at 818 (emphasis and citation omitted).

### III.  Standard of Review

This Court reviews the Commissioner's final decision as to disability pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3).  Although no deference is given to the ALJ's conclusions of law, findings of fact "are conclusive if . . . supported by 'substantial evidence' . . . ." Doughty v. Apfel, 245 F.3d 1274, 1278 (11th Cir. 2001) (citing Falge v. Apfel, 150 F.3d 1320, 1322 (11th Cir. 1998)).  "Substantial evidence is something 'more than a mere scintilla, but less than a preponderance.'"  Dyer v. Barnhart, 395 F.3d 1206, 1210 (11th Cir. 2005) (quoting Hale v. Bowen, 831 F.2d 1007, 1011 (11th Cir. 1987)).  The substantial evidence standard is met when there is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"  Falge, 150 F.3d at 1322 (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)).  It is not for this Court to reweigh the evidence; rather, the entire record is reviewed to determine whether "the decision reached is reasonable and supported by substantial evidence."  Cornelius v. Sullivan, 936 F.2d 1143, 1145 (11th Cir.

1991) (internal quotation and citations omitted); <u>see also</u> <u>McRoberts v. Bowen</u>, 841 F.2d 1077, 1080 (11th Cir. 1988); <u>Walker v. Bowen</u>, 826 F.2d 996, 999 (11th Cir. 1987).  The decision reached by the Commissioner must be affirmed if it is supported by substantial evidence–even if the evidence preponderates against the Commissioner's findings <u>Crawford v. Comm'r of Soc. Sec.</u>, 363 F.3d 1155, 1158-59 (11th Cir. 2004) (per curiam).

## IV.  Discussion

As noted above, Plaintiff raises two (2) issues on appeal.  While the arguments in the issues largely overlap, the undersigned addresses each issue in turn.

### A.  Dr. Groble's Opinions

Plaintiff argues that the ALJ did not state good cause reasons for discounting Dr. Groble's opinions.  <u>See</u> Pl.'s Mem. at 9-18.  She asserts that it was error for the ALJ to rely on the testimony of Olin M. Hamrick, Jr., M.D. ("Dr. Hamrick"), a medical expert who testified at the May 4, 2010 hearing before the ALJ, rather than on the opinions of Dr. Groble.[6] <u>Id.</u> at 10, 14, 17-18.  Plaintiff also contends that the March 26, 2009 Order and Opinion of this Court remanding this matter stated "that good cause does not exist to discount Dr. Groble's opinions and there was no substantial contrary evidence to indicate that his opinions were inconsistent." <u>Id.</u> at 10 (referring to Order and Opinion (Doc. No. 25), No. 3:07-cv-225-TEM (M.D. Fla.); Tr. at 834).

---

[6]        Plaintiff states in her Memorandum that "Dr. Hamrick's testimony was taken prior to any testimony from the Plaintiff; this is not unusual or an objectionable practice." Pl.'s Mem. at 11.  It does not appear that Plaintiff raises any issue with respect to this practice; however, the undersigned notes that Plaintiff answered multiple questions during Dr. Hamrick's testimony. <u>See</u> Tr. at 1039, 1041-42, 1043-45, 1051-58; <u>see also</u> Tr. at 813 (the ALJ noting that "testimony was elicited from" Plaintiff during Dr. Hamrick's testimony).

Dr. Groble began treating Plaintiff on May 15, 2002.  Tr. at 456-59, 577.  At the initial meeting, Dr. Groble performed a mental status evaluation, he asked Plaintiff various questions, and he transcribed the answers to those questions in his treatment notes.  Tr. at 456-59.  Between July 18, 2002 and July 29, 2009, Plaintiff saw Dr. Groble on about a monthly basis.  Tr. at 452-55, 582-96, 645-51, 908-49.[7]  During those appointments, Dr. Groble took detailed notes on, inter alia, Plaintiff's subjective complaints regarding continued neck pain, sleep problems, anger, suicidal thoughts, and major depression, as well as the difficulties Plaintiff was having with her worker's compensation carrier.  Tr. at 452-55, 582-96, 645-51, 908-49.[8]

On March 29, 2004, Dr. Groble completed a form entitled "Treating Psychiatrist's or Psychologist's Statement."  Tr. at 577-81.  Dr. Groble noted Plaintiff has marked restrictions of activities of daily living; marked difficulties in maintaining social functioning; and marked difficulties in maintaining concentration, persistence or pace.  Tr. at 578.  Dr. Groble indicated that Plaintiff would miss more than four (4) days of work per month, and that she would be unable to sustain competitive employment.  Tr. at 580.  Lastly, Dr. Groble opined that Plaintiff displayed a "total loss" in making simple work-related decisions, responding appropriately to usual work situations, and dealing with changes in a routine work setting.  Tr. at 580.  Further, Dr. Groble indicated that Plaintiff displayed "extreme loss" in responding appropriately to supervisors and co-workers.  Tr. at 580.  In a subsequent evaluation, on

---

[7]     Duplicates of Dr. Groble's treatment notes dated 1/20/2005, 2/22/2005, 3/22/2005, 4/22/2005, and 6/15/2005 are found at Tr. at 640-44.

[8]     While some of Dr. Groble's handwritten notes are difficult to decipher, the notes are sufficiently legible to determine Dr. Groble's opinion.

December 23, 2009, Dr. Groble essentially repeated these findings (on the same form entitled "Treating Psychiatrist's or Psychologist's Statement).  Tr. at 958-62.

On February 8, 2010, Dr. Groble authored a letter regarding his treatment of Plaintiff.  Tr. at 1003.  In the letter, Dr. Groble noted that he continued to treat Plaintiff in monthly intervals for "medication management of her psychiatric condition in addition to responsibility for control of Suboxone 8/2mg medication for control of chronic pain and opioid abuse has also been assumed by this office."  Tr. at 1003.  Dr. Groble noted that Plaintiff "continues to be under marked financial, emotional and interpersonal stress" and that she continues to report being limited in daily activities.  Tr. at 1003.  Dr. Groble further noted that at the time of his letter, Plaintiff was "unable to function vocationally on any kind of sustained or regular or consistent basis" and that "[h]er ability to function in terms of normal activities of daily living and management of her home are also markedly impaired and inconsistent."  Tr. at 1003.

Regarding a treating psychologist's[9] opinion,[10] the Regulations instruct ALJs how to weigh such opinions.  See 20 C.F.R. § 404.1527(d).  Because treating psychologists "are likely to be the medical professionals most able to provide a detailed, longitudinal picture of [a claimant's] medical impairment(s)," a treating psychologist's opinion is to be afforded controlling weight if it is "well-supported by medically acceptable clinical and laboratory

---

[9]      A treating psychologist is a psychologist who provides treatment or evaluation to the claimant and who has, or has had, an ongoing treatment relationship with the claimant, as established by evidence showing that the claimant sees or has seen the psychologist with a frequency consistent with accepted practice for the type of treatment and/or evaluation required for the condition.  See 20 C.F.R. § 404.1502.

[10]      Treating sources' opinions are statements from treating physicians, treating psychologists, and the like that reflect judgments about the nature and severity of the claimant's impairment, including symptoms, diagnosis, prognosis, what the claimant can still do despite the impairment, and physical or mental restrictions. 20 C.F.R. § 404.1527(a)(2); 20 C.F.R. § 404.1513(a).

diagnostic techniques and is not inconsistent with the other substantial evidence" in the record.  20 C.F.R. § 404.1527(c)(2).  When a treating psychologist's opinion is not due controlling weight, the ALJ must determine the appropriate weight it should be given by considering factors such as the length of treatment, the frequency of examination, the nature and extent of the treatment relationship, as well as the supportability of the opinion, its consistency with the other evidence, and the specialization of the psychologist.  20 C.F.R. § 404.1527(c).

If an ALJ concludes the opinion of a treating psychologist should be given less than substantial or considerable weight, he or she must clearly articulate reasons showing "good cause" for discounting it.  Lewis v. Callahan, 125 F.3d 1436, 1440 (11th Cir. 1997).  Good cause exists when (1) the opinion is not bolstered by the evidence; (2) the evidence supports a contrary finding; or (3) the opinion is conclusory or inconsistent with the treating psychologist's own records.  Phillips, 357 F.3d at 1240-41; see also Edwards v. Sullivan, 937 F.2d 580, 583-84 (11th Cir. 1991); Schnorr v. Bowen, 816 F.2d 578, 582 (11th Cir. 1987) (stating that a treating physician's medical opinion may be discounted when it is not accompanied by objective medical evidence).  The ALJ must "state with particularity the weight he [or she] gave the different . . . opinions and the reasons therefor."  Sharfarz v. Bowen, 825 F.2d 278, 279-80 (11th Cir. 1987); see also Moore v. Barnhart, 405 F.3d 1208, 1212 (11th Cir. 2005) (finding no reversible error when "the ALJ articulated specific reasons for failing to give [a treating physician] controlling weight," and those reasons were supported by substantial evidence); Lewis, 125 F.3d at 1440.

In the ALJ's Decision, he thoroughly summarized the medical evidence in the record, including Dr. Groble's treatment notes and opinions.  Tr. at 808-16.  As to Dr. Groble's opinions, the ALJ specifically found that "the mental assessments offered by Dr. Groble . . . cannot be given any significant weight."  Tr. at 815 (referring to Tr. at 577-81, 958-62).  The ALJ provided several reasons for discounting Dr. Groble's opinions, including his opinions "are not supported by objective observations in his treatment notes or significant narrative explanation within the assessment forms he completed."  Tr. at 815 (referring to Tr. at 577-81, 958-62); see Tr. at 812 (referring to Tr. at 577-81, 958-62) (the ALJ recognizing that Dr. Groble checked various boxes on forms but "did not support any of his selections with any significant narrative support, that [Dr. Groble's] treatment notes offer no support for the limitations he selected and that there is no record of [Plaintiff] experiencing an episode of decompensation requiring inpatient care for an extended period").

The ALJ further noted that "Dr Groble's treatment notes merely recite [Plaintiff's] subjective complaints, especially in regards to her complaints of problems dealing with her worker's compensation carrier."  Tr. at 811.  Additionally, the ALJ found that "Dr. Groble's progress notes do not offer any significant insight into [Plaintiff's] objective signs and symptoms of any defined mental disorder."  Tr. at 811 (citing Tr. at 456-59).  In sum, the ALJ recognized that the medical evidence shows that Plaintiff suffered from "a severe mental impairment . . . [h]owever, the medical evidence of record does not show that [Plaintiff] experience[d] a disabling level of limitation as a result of her credible mental limitations, even when considered in light of her physical condition."  Tr. at 815.

As to Dr. Groble's February 8, 2010 letter, the ALJ noted that Dr. Groble "confirm[ed] that his role in [Plaintiff's] care has been limited to issuing medication for management of [Plaintiff's] reported symptoms rather than providing any psychotherapy." Tr. at 812. The ALJ continued by noting that "[i]n this letter (once again without providing significant support aside from reciting [Plaintiff's] subjective complaints), Dr. Groble indicated that [Plaintiff] was unable to function vocationally on a sustained and regular basis." Tr. at 812 (citing Tr. at 1003). The ALJ concluded that "this statement is poorly supported and would not likely be attributed any significant weight even if relevant to the present matter. However, as [Plaintiff's] date last insured for benefits was December 31, 2003, her functioning in February of 2010 is irrelevant."[11]  Tr. at 812.

In further support of his discounting of Dr. Groble's opinions, the ALJ determined that Dr. Groble's opinions "are contradicted by the opinions of all other psychological assessments entered in into the record, including those of [Harish Kher, M.D. ("Dr. Kher")] and [Eileen Krimsky, Ph.D. ("Dr. Krimsky")], who both performed face to face examinations of [Plaintiff] during the time period in question." Tr. at 815 (referring to Tr. at 344-48, 374-78). Dr. Kher performed a psychiatric evaluation of Plaintiff on March 29, 2001. Tr. at 344-48. Dr. Kher found, <u>inter alia</u>, that Plaintiff displayed good attention and concentration and that

---

[11]     The ALJ's statement regarding Dr. Groble's role in Plaintiff's treatment is not entirely accurate. The relevant portion of Dr. Groble's letter states that Plaintiff "has remained in psychiatric treatment in this office since previous report concerning her psychiatric and pain related to [di]sibility.  She continues to be seen at monthly intervals for medication management of her psychiatric condition in addition responsibility for control of Suboxone 8/2mg medication for control of chronic pain and opioid abuse has also been assumed by this office." Tr. at 1003. Regardless, the ALJ concluded that this letter dated more than six (6) years after Plaintiff's date last insured was not relevant given the time in which it was completed.  In considering the ALJ's total assessment of Dr. Groble's opinions, this somewhat inaccurate statement does not detract from the undersigned's finding set forth below that substantial evidence supports the ALJ's Decision.

"[s]he was alert, and oriented to time, place, person and situation." Tr. at 347.  Dr. Kher diagnosed Plaintiff with "Major Depressive Disorder, Moderate, Recurrent." Tr. at 347.  Dr. Kher also noted that Plaintiff has a "History of Alcohol and Polysubstance Abuse in the past." Tr. at 347.  Dr. Kher recommended an antidepressant and psychotherapy.  Tr. at 348.  He noted that "[a]ny prolonged psychiatric intervention should be discouraged as this could re-enforce the dependency."  Tr. at 348.

Dr. Krimsky completed a psychological evaluation of Plaintiff on July 17, 2001.  Tr. at 374-78.  During that evaluation, Dr. Krimsky performed various tests.  Tr. at 376.  Dr. Krimsky noted that Plaintiff was "very depressed, anxious, and distressed" and that "[s]he [wa]s highly focused on somatic symptoms and may spend more time ruminating than in actual contact with the world."  Tr. at 376.  Dr. Krimsky recommended "[c]onservative treatment" and indicated that "consideration should be given to a comprehensive pain management program with a strong behavioral component."  Tr. at 376.  Dr. Krimsky concluded that "unless [Plaintiff] is determined to be permanently and totally disabled medically, retraining and re-employment assistance should be offered."  Tr. at 378.

Moreover, in his Decision, rather than assigning significant weight to Dr. Groble's opinions, the ALJ assigned "greater weight" to the opinion of Dr. Hamrick, a medical expert who testified at the May 4, 2010 hearing.  Tr. at 815; see Tr. at 1031-77.  Prior to making this finding, the ALJ detailed Dr. Hamrick's testimony, including an explanation of the similarities and differences between Dr. Hamrick's testimony and the other medical opinions contained in the record.  Tr. at 812-14.  The ALJ reasoned that Dr. Hamrick's testimony was deserving of "greater weight" because he "is a licensed clinical psychologist who arrived at his opinion

-13-

based on a comprehensive review of the medical record as well as considering [Plaintiff's] own testimony as to her mental state during the time period in question." Tr. at 815-16.  The ALJ further reasoned that "Dr. Hamrick's testimony was generally consistent with [Plaintiff's] medical record as a whole and he was made available for cross examination by [Plaintiff's] representative and resolved all perceived conflicts between his testimony and the medical evidence of record."  Tr. at 816.

After reviewing the entirety of the record before this Court, the undersigned finds that the ALJ properly discounted the opinions of Dr. Groble.  The ALJ's reasoning amounts to the required "good cause" and is supported by substantial evidence.[12]  This Court's prior Order and Opinion cautioned Plaintiff that "this opinion does not suggest Plaintiff is entitled to disability benefits.  Rather, it speaks only to the process the ALJ must engage in and the findings and analysis the ALJ must make before determining whether plaintiff is disabled." Tr. at 828 (citing Phillips, 357 F.3d at 1244).  Plaintiff's argument that the ALJ erred by failing to abide by this Court's prior Order and Opinion is without merit.  The ALJ's Decision is supported by substantial evidence.

### B.  Fully and Fairly Evaluating the Record

Plaintiff argues that the ALJ failed to fully and fairly evaluate the medical evidence of record.  Pl.'s Mem. at 18-20.  Plaintiff begins this argument by noting that "[i]n this voluminous record [Plaintiff's counsel] will concede that this [argument] may be a bit of a

---

[12]        Throughout her Memorandum, Plaintiff argues that the gravamen of Dr. Hamrick's opinion was that Plaintiff was able to drive during the relevant time period; therefore, according to Plaintiff, Dr. Hamrick concluded that Plaintiff was not disabled because she was able to drive. Pl.'s Mem. at 14, 17-18, 20. That Plaintiff could drive was not the exclusive reason supporting Dr. Hamrick's opinion or the ALJ's Decision. See Tr. at 814. Rather, Plaintiff's ability to drive was considered as one factor in the entire analysis performed by the ALJ.

challenge.  Nevertheless, the obligation remains."  Id. at 18.  Plaintiff notes that the ALJ

"simply could have ordered interrogatories to clarify" Dr. Groble's opinions and he "could also

have ordered a consultative examination."[13] Id. at 19.

"It is well-established that the ALJ has a basic duty to develop a full and fair record."

Ellison v. Barnhart, 355 F.3d 1272, 1276 (11th Cir. 2003) (citing 20 C.F.R. § 416.912(d)).

"Nevertheless, the claimant bears the burden of proving that he is disabled, and,

consequently, he is responsible for producing evidence in support of his claim."  Id. (citing

20 C.F.R. § 416.912(a), (c)).  While "[t]he [ALJ] has a duty to develop the record where

appropriate[,]" the ALJ "is not required to order a consultative examination as long as the

record contains sufficient evidence for the [ALJ] to make an informed decision." Ingram, 496

F.3d at 1269 (citing Doughty, 245 F.3d at 1281).  Furthermore, to remand a case for the

ALJ's failure to fully develop the record, there must be a showing that the claimant's right to

due process has been violated because of such failure.  Brown v. Shalala, 44 F.3d 931,

934-35 (11th Cir. 1995).  Prejudice exists when the record contains evidentiary gaps which

may cause the ALJ to reach an unfair determination due to the lack of evidence.  Id. at 935.

Plaintiff had the burden at the administrative level of proving she was disabled.  See

Ellison, 355 F.3d at 1276 (citing 20 C.F.R. § 416.912(a), (c)).  Plaintiff failed to carry that

burden.  There is a multitude of medical evidence and opinions in the record pertinent to the

time period at issue.  Upon review, no evidentiary gaps exist in the record, and the ALJ's

Decision is supported by substantial evidence.

_____

[13]     To the extent Plaintiff repeats the same arguments relating to the ALJ's discounting of Dr. Groble's opinions, those arguments are not re-addressed here.

### V.  Conclusion

After a thorough review of the entire record, the undersigned finds that the ALJ's Decision is supported by substantial evidence.  Accordingly, it is

**ORDERED**:

1.     The Clerk of Court is directed to enter judgment pursuant to sentence four of 42 U.S.C. § 405(g) **AFFIRMING** the Commissioner's final decision.

2.     The Clerk of Court is further directed to close the file.

**DONE AND ORDERED** at Jacksonville, Florida on September 25, 2013.


_James R. Klindt_
**JAMES R. KLINDT**
United States Magistrate Judge


mn
Copies to:
Counsel of Record